**FEDERAL DEPOSIT INSURANCE CORPORATION,**
Plaintiff–Appellee,

v.

**THE CREMONA COMPANY, et al.,**
Defendants, Richard F. Gonda,
Defendant–Appellant.

No. 86–3168.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 22, 1987.

Decided Nov. 6, 1987.

Harry T. Quick (argued), Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for defendant-appellant.

Frances Floriano Goins (argued), Squire, Sanders & Dempsey, Cleveland, Ohio, for plaintiff-appellee.

Before ENGEL and BOGGS, Circuit Judges; and HILLMAN, District Judge.*

HILLMAN, District Judge.

The Federal Deposit Insurance Company ("F.D.I.C.") initiated this action to recover money due on three promissory notes executed by partners of the Cremona Company, an Ohio general partnership, in favor of the now defunct Northern Ohio Bank ("N.O.B."). The complaint named as defendants, Cremona Company, Rene Cremona, Jenan Cremona, Ruth W. Kellogg, John W. Kellogg, and the appellant in this matter, Richard F. Gonda.

The Cremonas, Ruth W. Kellogg and appellant Gonda, entered into an Agreement of Partnership on April 12, 1974. The purpose of the partnership was to open and operate a restaurant to be managed by the Cremonas. While the partnership was created as a general partnership under Ohio law, the partners' interests in the venture were not equal. The Cremonas held a 70 percent interest, while Kellogg and Gonda each held a 15 percent interest. The agreement required that each partner consent in writing to the borrowing or lending of money by the partnership. In addition, the agreement provided that:

Gonda shall only be liable for the following contemplated partnership debts:

---

* The Honorable Douglas W. Hillman, Chief Judge of the United States District Court for the Western District of Michigan, sitting by designation.

(a) Fifteen percent (15%) of funds to be borrowed from Northern Ohio Bank, which in no event shall exceed the principal sum of Eighteen Thousand Dollars ($18,000.00) plus accrued interest thereon.

(b) Fifteen percent (15%) of funds to be borrowed from Citizens Federal Savings & Loan Association, which in no event shall exceed the principal sum of Twenty-Four Thousand Dollars ($24,000.00) plus accrued interest thereon.

On April 30, 1974, Cremona executed a promissory note to N.O.B. The note was for $120,000.00 plus interest, and came due on April 30, 1975. The note was signed by all four partners. At the same time each of the partners executed an Agreement to be Bound,[1] which was required by the bank as a condition of the loan. The Agreement to be Bound was a standard form prepared by the bank. However, to the agreement signed by Gonda a typewritten sentence was added which provided that: "[s]aid liability of the undersigned shall be limited to fifteen (15%) per cent of the total liability, at time of default."[2]

On May 31, 1974, an additional $50,000.00 was borrowed from the bank in the name of the Cremona Company. The promissory note was only signed by the Cremonas. A third note was executed in the name of the partnership by the Cremonas in July of 1974 and was also only signed by the Cremonas. This note was for $25,000. All three notes had an interest rate of prime plus 2½ percent.

In February of 1975 the bank failed and its assets were acquired by the F.D.I.C. in its receivership capacity. The F.D.I.C., in its corporate capacity, then acquired some of the assets of N.O.B., including the three promissory notes, through a "purchase and assumption" transaction.[3]

The three notes remain due and owing, and the F.D.I.C., in its corporate capacity, filed this action in order to recover, from Gonda, the principal and interest due on all three notes. In the district court Gonda contended that he is only liable for fifteen percent (15%) of the $120,000 note, plus accrued interest up to the time of default. He asserted that he could not be held liable for either the $50,000 or $25,000 notes as the Partnership Agreement provided that the partnership could not borrow money without the written consent of all of the partners. He further asserted that his liability on the $120,000 note was limited by both the Partnership Agreement and the Agreement to be Bound. On January 21, 1986, after a bench trial, Frank J. Battisti, Chief Judge of the Northern District of Ohio, entered judgment in favor of the F.D.I.C. and against Gonda in the amount of $195,000 plus interest.[4] Gonda now appeals.

■ In support of this appeal, appellant first argues that the district judge erroneously held that both the Agreement to be Bound and the Partnership Agreement had to meet the requirements set forth in 12 U.S.C. § 1823(e) (West Supp.1987)[5] before

---

1. The Agreement to be Bound signed by Ruth Kellogg was also signed by John Kellogg.

2. To the Agreement to be Bound which was signed by the Kelloggs was added: "Said liability of the undersigned shall be limited to fifteen (15%) per cent of the total liability."

3. For a description of the "purchase and assumption" transaction see *Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.1982).

4. On August 29, 1978, the district court entered an order granting plaintiff's motion to dismiss Ruth and John Kellogg. Rene and Jenan Cremona have been discharged in bankruptcy. *See In re Rene Cremona, a/k/a Renato Cremona*, Case No. 85–1559, (Bankr., M.D.Fla. Sept. 27, 1983); and *In re Jenan Cremona*, Case No. 878–01997 (Bankr., N.D.Ohio April 17, 1979).

5. Section 1823(e) provides that:

   No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall be executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

they could be asserted against the F.D.I.C. However, after the decision of this court in *F.D.I.C. v. Allen,* 801 F.2d 863 (6th Cir. 1986) (district court erred in holding that protection of Section 1823(e) was unavailable to the F.D.I.C. where partnership agreements and loan guaranties were part of bank's file), it is clear that Section 1823(e) is to be applied to these types of agreements. Furthermore, application of Section 1823(e) is not, as appellant asserts, limited to side agreements which call into question the F.D.I.C.'s right to the asset which it has acquired, as contrasted with the value of the asset. *See e.g., F.D.I.C. v. Hatmaker,* 756 F.2d 34, 37 (6th Cir.1985).

Appellant also argues that even if the district court judge was correct in holding that both the Partnership Agreement and the Agreement to be Bound were subject to the provisions of Section 1823(e) he erred in holding that those requirements were not met.

■ As to the Partnership Agreement, we agree with the findings of the district court. From the record it is clear that the Partnership Agreement was not executed by the bank and by Gonda contemporaneously with the acquisition of any of the notes by the bank. In addition, the minutes of N.O.B.'s loan committee do not reflect the loan committee's approval of the Partnership Agreement. In fact, there is no evidence that the loan committee ever considered the issue. Furthermore, it is not enough that the Partnership Agreement was eventually found in the records of the N.O.B. As another panel of this court held in *Allen,* a failed bank's knowledge will not be imputed to the F.D.I.C. *Allen,* 801 F.2d at 865.

It is conceded by the appellant that the Cremona Partnership was formed as a general partnership under Ohio law. Brief for Appellant at n. 1. Under Ohio law, each partner of a general partnership is jointly liable for all obligations of the partnership. Ohio Rev.Code Ann. § 1775.14(B) (Baldwin 1987); *Battista v. Lebanon Trotting Assn.,* 538 F.2d 111, 116 (6th Cir.1976). In addition,

Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

Ohio Rev.Code Ann. § 1775.08(A) (Baldwin 1987). In other words, for appellant to assert successfully the limitations of liability contained in the partnership agreement as a defense against the F.D.I.C. he must show that the agreement met the requirements of Section 1823(e).

As we find that the Partnership Agreement does not meet the requirements of Section 1823(e), we find that the F.D.I.C. is not bound by any of the limitations contained in the Cremona Partnership Agreement and Gonda is liable for the full amount due on all three notes pursuant to Ohio Rev.Code Ann. § 1775.14(B) unless he can assert some other defense to the liability claimed by the F.D.I.C.

■ We disagree with the district court's conclusion that the Agreement to be Bound did not meet the requirements of Section 1823(e). The district court stated that "even if the fact that the Agreement to be Bound was apparently drafted by the Bank amounted to execution by the Bank, the agreement would still fail to satisfy the requirement that it be approved by the board of directors or the loan committee." Slip. Op. at 5; Jt.App. at p. 29. A review of the record in this matter shows that the minutes from the July 11, 1974 meeting of Northern Ohio Bank's Officers Loan Committee refer specifically to the personal guaranty of Richard Gonda in approving the $120,000 loan to Cremona. Jt.App. at 72. There is nothing in the record to suggest that this "personal guaranty" could be anything other than the Agreement to be Bound which Gonda signed. We find that the district court erred insofar as it held

that the Agreement to be Bound was not approved by the loan committee of the bank.

In addition, for the purposes of Section 1823(e) the Agreement to be Bound was executed by the bank contemporaneously with the acquisition of the asset by the bank. It is undisputed that the Agreement to be Bound was prepared by the bank, and presented to and signed by the appellant at the same time as the $120,000 note. The purpose of requiring the bank to execute the agreement is clearly to help insure that the bank has considered the content of the agreement as it relates to the transaction with which it is associated. As Justice Stevens has noted, "in all cases of statutory construction, our task is to interpret the words of those statutes in light of the purposes Congress sought to serve." *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979). In the case of Section 1823(e), the Congressional purpose in requiring that the bank execute any agreement which is to be asserted against the F.D.I.C. in order to diminish or defeat the F.D.I.C.'s interest in an asset acquired during a purchase and assumption transaction is fulfilled when the agreement is prepared by the bank.

We also find that from the time of execution the Agreement to be Bound has continuously been an official record of the bank. At trial, counsel for the F.D.I.C. stipulated that the Agreement to be Bound was found in the files of N.O.B. Jt. App. at 76; Tr. at 3. Appellee suggests that there is some relevance in the fact that the Agreement to be Bound was not transferred to the F.D.I.C. at the same time as the promissory notes which created the obligations at issue in this proceeding. We find none. All that Section 1823(e) requires is that the agreement be a continuous part of the bank's official record. Absent evidence to the contrary, we find that where a document which meets the other requirements of Section 1823(e) is found in the official records of the failed bank it is considered to have been a continuous part of the official records of the bank from the time of its execution. To hold otherwise would be to place an insurmountable burden of proof upon the party seeking to assert the validity of an agreement under Section 1823(e). This is not consistent with the Congressional purpose in enacting the section.

Finally, it is clear that the other requirement set forth in Section 1823(e) has been met. The Agreement to be Bound is in writing. We conclude that the Agreement to be Bound meets the requirements of Section 1823(e) and is therefore valid against the F.D.I.C. We make this finding only with respect to the $120,000 obligation. It is clear that this agreement was not entered into contemporaneously with the execution of the other two obligations and therefore cannot be used by the appellant to decrease his liability for those obligations.

This does not end our inquiry. We must now determine the effect of the document; to wit, whether a side agreement can limit the liability of an obligor on the principal debt, and, if such is the case, whether such a limitation of liability can be asserted against the F.D.I.C.

As a general rule federal law applies to this inquiry. However, in the absence of applicable federal law, state law will be incorporated into the federal law where it permits a rational resolution of the matter and does not interfere with the attainment of the federal objectives embodied in the law. *D'Oench, Fuhme & Co. v. F.D.I.C.,* 315 U.S. 447, 473–74, 62 S.Ct. 676, 686–87, 86 L.Ed. 956 (1942) (Jackson, J., concurring); *F.D.I.C. v. Armstrong,* 784 F.2d 741, 744 (6th Cir.1986).

In support of his argument that the Agreement to be Bound limits his liability on the $120,000 note to fifteen percent (15%), appellant cites Ohio Rev.Code Ann. § 1303.18 (Baldwin 1987) which provides that:

(A) As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as part of the same trans-

action, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitations when he took the instrument.

While we have previously held that Section 1823(e) does not, of itself, authorize holder-in-due-course status for the F.D.I.C., *F.D.I.C. v. Wood,* 758 F.2d 156, 159 (6th Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985), we have also held that where state law precludes the F.D.I.C., when acting in its corporate capacity, from attaining holder-in-due-course status, the application of state law frustrates the objectives of the federal program and is therefore inapplicable. *Id.* Therefore, even if, as is argued by appellant, Ohio law precludes appellee from attaining holder-in-due-course status, the F.D.I.C. may still take the note free of any defense which Gonda may raise as

> when the F.D.I.C. in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, and without actual knowledge of any defense against the note, it takes the note free of all defenses that would not prevail against a holder in due course.

*Id.* at 161.

It is clear from the record that F.D.I.C. did not have actual knowledge of the existence of the Agreement to be Bound signed by Gonda at the date upon which it entered into the purchase and assumption transaction. It is also clear that the F.D.I.C. cannot be charged with knowledge simply because the information could have been found in the failed bank's files. *Gilman v. F.D.I.C.,* 660 F.2d 688, 695 (6th Cir.1981). Therefore, under *Wood* the F.D.I.C. can raise any defenses available to a holder-in-due-course pursuant to Section 1303.18 (Baldwin 1987).

Appellant argues that the F.D.I.C. does not fall within the exception set forth in Section 1303.18 (Baldwin 1987) as it did not take without notice of the Agreement to be Bound which he signed. His attempt to support his argument by stressing the Ohio Code's use of the term "notice" rather than "knowledge" is unavailing. Under Ohio law, a finding that a party had "notice" is dependent upon a finding that the party had actual or implied "knowledge."[6] There is no evidence in the record that the F.D.I.C. had actual knowledge of Gonda's Agreement to be Bound when it executed the purchase and assumption transaction. Nor is there any evidence that the F.D.I.C. had received notice of its existence, or had knowledge of facts which would have given it reason to know that the agreement existed, as the knowledge of N.O.B. cannot be imputed to the F.D.I.C. *Gilman, supra.* Therefore, we must find that Section 1303.-18 is not applicable to the present matter, and Gonda cannot assert its protections against the F.D.I.C. in an attempt to limit his liability on the $120,000 note.

For the reasons set forth above, we find that to be effective in reducing Gonda's liability to the F.D.I.C. both the Agreement to be Bound and the Cremona Partnership Agreement must meet the requirements of 12 U.S.C. § 1823(e). We further find that the Cremona Partnership Agreement does not meet those requirements and therefore cannot be asserted against the F.D.I.C. Finally, we find that while, with respect to the $120,000 note, the Agreement to be Bound does meet the requirements of Section 1823(e), it is ineffective, under Ohio Rev.Code Ann. § 1303.18 and federal common law, in limiting Appellant's liability to the F.D.I.C. Therefore, the judgment of the district court in this matter is AFFIRMED.

---

**6.** Ohio Rev.Code Ann. § 1301.01(Y) (Baldwin 1987) provides that:
  A person has "notice" of a fact when:
  (1) he has actual knowledge of it; or
  (2) he has received a notice or notification of it; or
(3) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.