## CIRCUIT COURT OF LOUDOUN COUNTY

Loudoun County
Board of Supervisors

v.

Vanguard Limited Partnership et al.

December 1, 1994

Case No. (Chancery) 15824

BY JUDGE THOMAS D. HORNE

This case is before the Court on the Demurrer and Plea in Bar of the Cross-Claim Defendants, Deborah J. Wilson and Lynnford Wilson, Sr., as trustee and beneficiary, respectively, of the Lynnford S. Wilson, Sr., and Grace J. Wilson Revocable Trust. They assert that the Cross-Claim filed against them by Huthwaite Holdings L.C.C. fails to state a cause of action for which relief can be granted and should be dismissed. Other Cross-Defendants are the Vanguard Limited Partnership, Bruce and Anne Drenning, and George Martin, Trustee.

The Complainant Board of Supervisors of Loudoun County is the Counter-Defendant named in Counterclaim and Cross-Claim filed by Huthwaite. The County of Loudoun initiated the instant chancery cause pursuant to § 58.1-3965 et seq. of the Code of Virginia for the purpose of subjecting real estate to the payment of delinquent taxes. Incidental to such a proceeding, the Court, or the Commissioner to whom this case is referred, must ascertain the existing liens against the real property as well as their amounts and priorities. § 8.01-97, Code of Virginia; See, Lile's *Equity Pleading and Practice*, § 417 et seq. Thus, a request for a determination as to the validity of liens which may affect the subject property, as well as their amounts and priorities, meets the germaneness requirement of Rule 2:14, Rules of the Supreme Court of Virginia.

In its Cross-Bill, Huthwaite asks not only that the Court make a determination as to the extent of its security interest in the subject parcel, but in two other parcels as well, which together make up what is now an approved 55 lot subdivision. It suggests that the subdivision of the property into lots whose boundaries do not follow those of the original three parcels impairs its collateral and, accordingly, should be invalidated.

The Court finds that, as pleaded, the demurrer to the claim that the subdivision of the three parcels into 55 separate lots is invalid as to Huthwaite should be sustained. Therefore, a ruling as to the Trust's special pleas of res judicata and the statute of limitations will be deferred.

While counsel for the Wilson Trust acknowledge in their papers the limitations on judicial review when considering a demurrer, they go outside the facts as pleaded in the papers filed in their defense. See, *Rosillo v. Winters*, 235 Va. 268, 367 S.E.2d 717 (1988). The Court will consider only those facts which have been pleaded and those facts which can be reasonably inferred or implied from such facts.

Huthwaite contends that the subdivision is invalid because their collateral has been impaired. However, they acquired their interest after the subdivision had been approved and the record plat signed by the trustee for the noteholder. While it suggests that the record plat was not signed by the noteholder, the pleadings suggest no reason to deviate from the statutory mandate that the plat need only be signed by the owner, proprietor, and trustee. § 15.1-477, Code of Virginia.

The security interests of Huthwaite in the subdivided parcels were derived from two sources. One of these, consisting of a first trust on one of the original three parcels and a non-recourse indemnity mortgage on another, was acquired through the assignment of the note of the owner by the Resolution Trust Company, after the original lender went into receivership. The other consists of a note assigned by the development subsidiary of the original lender to Huthwaite, which was secured by a trust on all three parcels junior to the purchase money trust of its parent, the indemnity mortgage, and a purchase money trust for the benefit of the Wilsons.

As pleaded, the assignment of the notes and the security interests to Huthwaite do not confer upon it the right to challenge the subdivision of the original three parcels. While the failure of the trustee to carry out the directives of the original lender may be actionable, such an action would be personal to the lender or its assignee, and not otherwise germane to the issues raised by the County in their attempt to subject one of the three parcels to sale for delinquent taxes.

These parties and the instant subdivision are no strangers to this Court. *See, Rackham v. Vanguard Limited Partnership*, (Chancery No. 12673, Circuit Court of Loudoun County).

In Chancery No. 12673, the Court recounted how, in 1988, the Vanguard Limited Partnership sought to subdivide three parcels of land on the southside of State Route 694 in Loudoun County. This earlier case involved a challenge to the method by which the subdivision was approved. The Court found that the subdivision was valid and that the County had complied with all of the necessary and proper procedures in the adoption of the record plat.

The instant cross-claim involves issues of the means by which Vanguard acquired its interest in the property and what effect the default by Vanguard, intervention of the RTC, foreclosure by the Wilsons, and assignments to Huthwaite have had on the interests of Huthwaite and the Trust in the land sought to be sold to pay delinquent taxes.

Huthwaite, the Cross-Complainant in the instant proceedings, is the assignee of a note for $600,000.00 secured by a first trust on Parcel 8 of the three parcels (8, 9, and 10) which, in the aggregate, made up the land out of which the 55 acre subdivision was created. It also holds an indemnity mortgage of Parcel 9, as well as being the assignee of a note in the amount of $2,029,650.00, secured by a deed of trust on all three parcels. The "Non-Recourse Indemnity Mortgage" on Parcel 9 was recorded prior to a deed of trust securing payment of the note to the Wilsons, and upon which the Wilsons have foreclosed. In addition, the trustee has foreclosed under the Wilsons' first trust of Parcel 10. Parcels 9 and 10 were acquired by the Wilson Trust through the foreclosure sale. The deficiency of Vanguard after the foreclosure has been reduced to judgment and constitutes a lien on Parcel 8.

Huthwaite contends, *inter alia*, that the act of subdividing three contiguous parcels into an approved 55 lot subdivision incorporating the three parcels is void. As the security instruments make reference to the three parcels and not to lots within the recorded subdivision, certain lots within the subdivision overlap the boundaries of the parcels. Thus, it suggests that its collateral has been impaired and it is entitled to a declaration that such impairment renders the subdivision invalid. Additionally, Huthwaite concludes that approval by the Board of Supervisors of the record plat without the approval of the secured party, renders the subdivision invalid.

Huthwaite complains that the County has taxed the 55 acres as lots within a subdivision rather than as three parcels of farmland. Such taxation, it suggests, raises an issue ripe for declaratory relief in the instant proceeding. As the issue of taxation is tied to the determination of the validity of the subdivision, the pleadings as to such count are subject to demurrer.

Lastly, Huthwaite asks that the Court find that the Trust defenses to the "Indemnity Mortgage" are ineffective as to it, as a result of the assignment of the $600,000.00 note secured by a first trust on Parcel 8 and the Indemnity Mortgage on Parcel 9.

In its prayer for relief, Huthwaite asks that the Court find that the act of subdividing the property is void as to it; that the parcels be returned to the original three parcel configuration; that Huthwaite be declared the first trust and second trust holder as to the 94.8314 acre parcel (Parcel 8); that Huthwaite be declared the holder of a first indemnity mortgage and third trust holder as to the 46.164 acre parcel (Parcel 9); that Huthwaite be declared the second trust holder as to the 157.4197 acre parcel (Parcel 10); that the property be assessed for taxes in its original three parcel configuration rather than as a 55 lot subdivision; that the Court declare the "Notice of Dispute and Defenses" filed by the Wilson Trust do not bar the foreclosure by Huthwaite under the indemnity mortgage; and that the property be sold to satisfy any liens outstanding on the property.

The Court has previously determined in other proceedings that the approval of the subdivision met the requirements of the relevant statutes and ordinances and was valid. The Cross-Bill states the subdivision was approved prior to the acquisition by Huthwaite of a security interest in the property.

Huthwaite asserts that it is entitled to a declaration that approval of the subdivision by the County was a nullity and that it holds a first trust securing $600,000.00 on what was formerly Parcel 8 prior to the subdivision. In addition, Huthwaite claims that it holds a first indemnity mortgage on Parcel 9 securing the $600,000.00 and a third deed of trust securing $2,029,650.00 on the same parcel. Lastly, it asks that the Court declare that it holds a second trust securing $2,029,650.00 on what was formerly Parcel 10.

This case is before the Court on a demurrer; accordingly, the Court must confine its consideration of the sufficiency of the Cross-Bill to the pleadings and exhibits.

The Trust contends that the Non-Recourse Indemnity Mortgage recorded against Lot 9 is, as a matter of law, a credit line deed of trust which fails to meet the requirements of § 55-58.2, Code of Virginia. A "credit line deed of trust" is defined as:

> any deed of trust, mortgage, bond, or other instrument entered into after July 1, 1982, in which title to real property located in this Commonwealth is conveyed, transferred, encumbered, or pledged to secure payment of money including advances to be made in the future by the noteholder named in the credit line deed of trust. § 55-58.2(1), Code of Virginia.

As counsel for the Trust have observed, the indemnity mortgage fails to meet the statutory requirements as to form. However, this does not mean that it may not, as a matter of law, otherwise be enforceable as a legal or equitable lien as to Parcel 9.

As counsel for Huthwaite has observed, the determination of whether Huthwaite has a security interest in Parcel 9 is a matter of federal commercial law. Thus, he draws the attention of the Court to the seminal case of *D'Oench Duhme v. F.D.I.C.*, 314 U.S. 447 (1942). See also, *W. T. Jones and Co. v. Foodco Realty, Inc.*, 318 F.2d 881 (4th Cir. 1963). Thus, absent a written agreement or an allegation of fraud in the *factum*, Huthwaite asserts, that it is shielded from the defenses raised by the Trust because it is the assignee of the note and indemnity mortgage from the Resolution Trust Company. As the Court noted in *Resolution Trust Co. v. Allen*, 16 F.3d 568 (4th Cir. 1994):

> [t]he D'Oench Duhme doctrine . . . and its progeny, prohibits claims based upon agreements which are not properly reflected on the official books or records of a failed bank or thrift. The purpose of the doctrine is to enable the FDIC or RTC to rely on official bank records to set forth the rights and obligations of the financial institution to the exclusion of extraneous matters . . . Congress later codified elements of the common law D'Oench Duhme doctrine in 12 U.S.C.A. §§ 1823(e) and 1821(d)(9) . . . .

Defenses of failure of consideration, fraud in the inducement, and misrepresentation are barred under the D'Oench Duhme doctrine. *RSR Properties, Inc. v. F.D.I.C.*, 706 F. Supp. 524 (W.D. Texas 1989). As such defenses are founded upon unwritten agreements, acquisition of a security interest in the asset by the RTC cuts off such defenses as a matter of

Federal commercial law even though the RTC may not occupy the status of a holder in due course under state law. Once a defense is cut off by the acquisition of the interest by the RTC, it cannot be renewed simply by the transfer of the asset to a third party by the RTC. It has been said that to hold otherwise would, "emasculate the policy behind section 1823(e) of encouraging . . . [it] to participate in transfer agreements." *F.D.I.C. v. Newhart*, 713 F. Supp. 320 (W.D. Missouri 1989). The Court agrees with the position of Huthwaite that the prophylactic effect of *D'Oench Duhme* would preclude the Trust from asserting such defenses as those raised by the Cross-Bill.

By reason of the foreclosure by the Wilsons' trustee under their trusts on Parcel 9 and Lot 10, the Wilson Trust acquired title to those lots by reference to their original lot designations and not with reference to the approved subdivision. The Trust then became a creditor of Vanguard to the extent of any deficiency of Vanguard after the foreclosure sale. As pleaded, such foreclosure would not under *D'Oench Duhme* cut off a prior security interest in the RTC in the Non Recourse Indemnity Mortgage. Similarly, the Wilson Trust would be cut off from asserting any defenses against an assignee of the RTC arising out of the negotiations between the Bank, which made the loan, and the Wilsons. Once the defaulting bank's interest in the asset to be secured was acquired by the RTC, the later acquisition of the note and security interests by Huthwaite would have been protected from such defenses even if Huthwaite had actual notice.

In summary, the Court finds as follows:

1. It has jurisdiction to determine the matters set forth in the Cross-Bill.

2. The Cross-Bill fails to state a cause of action upon which relief can be granted as to a declaration regarding the invalidity of the subdivision. The Court will sustain the Demurrer as to such claim but will grant to Huthwaite the right to replead such claim, as well as any other claim to which the Demurrer is sustained herein within twenty-one days of the entry of the Decree reflecting this letter opinion, should it be so advised.

3. With respect to Parcels 8 and 9, the Demurrer to that portion of the Cross-Bill which asks that the Court determine the nature and extent of any liens upon such parcels will be overruled. However, that portion of the Demurrer which relates to a similar determination as to Parcel 10 is sustained. Huthwaite will be granted twenty-one days to replead as to Parcel 10 should it be so advised.

4. The demurrer to the claim that Parcel 8 not be assessed for tax purposes as part of a subdivision is sustained with leave granted to Huthwaite to replead should it be so advised.

5. The demurrer to the cross-complaint that the defenses raised in the Wilson Family Trust's "Notice of Dispute and Defenses" do not bar foreclosure under the indemnity mortgage is overruled.

6. The demurrer to the request that the Court determine the ownership of the property (except as to Parcel 10, as to which the demurrer is sustained with leave to replead), the amounts and priority of any liens, and that it cause the property to be sold is overruled.