NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ANTHONY THOMAS and WENDI THOMAS; AT EMERALD, LLC<br>          Debtors. | BAP No. NV-19-1331-GTaB<br><br>Bk. No. 3:14-bk-50333-GS |
| ANTHONY THOMAS; WENDI THOMAS,<br>          Appellants,<br>v.<br>JERI COPPA-KNUDSON, Chapter 7 Trustee; UNITED STATES TRUSTEE,<br>          Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Gary A. Spraker, Bankruptcy Judge, Presiding

Before: GAN, TAYLOR, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtors Anthony and Wendi Thomas ("Debtors") appeal

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules

(continued...)

the bankruptcy court's order denying their motion to vacate an order converting their to chapter 11 case to chapter 7, as void under Civil Rule 60(b)(4), made applicable by Rule 9024. Debtors contend that they did not have adequate notice that the bankruptcy court would permit the withdrawal of their counsel or that the bankruptcy court would convert their case. They argue that the bankruptcy court violated their due process rights by permitting counsel to withdraw without effective notice and by converting the case to chapter 7 without notice.

Debtors had adequate notice of their attorney's motion to withdraw. Although Debtors may not have had adequate notice that their case would be converted to chapter 7, they failed to show any prejudice caused by the procedural defect. Additionally, Debtors did not appeal the conversion order and cannot use Civil Rule 60(b)(4) as a substitute for a timely appeal. Accordingly, we AFFIRM.

## FACTS[2]

### A.    The Bankruptcy Filings

In March 2014, Debtors filed their joint chapter 11 petition. AT

---

[1](...continued)
of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to review the bankruptcy court's docket and relevant adversary proceedings. *See Rivera v. Curry (In re Rivera)*, 517 B.R. 140, 143 n.2 (9th Cir. BAP 2014), *aff'd in part & dismissed in part*, 675 F. App'x 781 (9th Cir. 2017).

Emerald, LLC ("AT Emerald"), an entity wholly owned by Mr. Thomas, concurrently filed a chapter 11 petition, and the bankruptcy court granted a motion for joint administration. The court then approved the employment of Alan Smith as counsel for Debtors and AT Emerald.

AT Emerald's scheduled assets consisted of $200 in a checking account and a single emerald which it valued at $200 million (the "Thomas Emerald"). AT Emerald listed two creditors in its schedules: John Beach ("Beach"), who held a claim of $540,000 secured by the Thomas Emerald, and Sarasota Vault, which held a claim of $1,200 for unpaid rent.

In April 2014, the United States Trustee ("UST") filed a motion to convert the AT Emerald case to chapter 7 based on AT Emerald's failure to insure the Thomas Emerald. After a stipulated continuance, the hearing was set for September 10, 2014.

Debtors and AT Emerald filed a motion to extend the exclusivity period for filing a plan and disclosure statement for a period of 90 days. Debtors and AT Emerald stated that they were awaiting the sale of the Thomas Emerald and their "plans of reorganization [were] dependent upon the sale of the emerald."

B.     **The Motion to Sell and Beach's Motion to Compel**

AT Emerald then filed a motion to sell the Thomas Emerald, free and clear of liens, to Koyo Shipping and Trading Corporation ("Koyo") for an undisclosed price (the "Sale Motion"). AT Emerald asserted that the

purchase price would be sufficient to pay all secured and unsecured claims in both the entity case and the individuals' case, including an unscheduled, disputed claim of Kenmark Ventures LLC ("Kenmark").[3] But because the sale price was so substantial, Debtors argued that disclosure of the actual price would risk their personal safety.

The bankruptcy court granted the Sale Motion and ordered that the sum of $20,000,000 from sale proceeds be deposited into Mr. Smith's trust account and not disbursed until further order from the court.

While the Sale Motion was pending, Beach obtained an order permitting it to inspect the Thomas Emerald which was held at the Sarasota Vault in Sarasota, Florida. Prior to the hearing on the Sale Motion, Beach filed a motion seeking to compel AT Emerald to provide the second key required to access Sarasota Vault's two-key system. AT Emerald opposed the motion and argued that Koyo's representative had already inspected the Thomas Emerald and informed Mr. Thomas that Koyo did not want anyone to have access to the vault

The bankruptcy court granted the motion to compel and ordered the parties to file a status report of the results of the examination and the status of the sale. At a status conference, Beach reported that AT Emerald had not provided the key and was unable to provide any update regarding the sale

---

[3] In February 2016, the court entered a nondischargeable judgment in favor of Kenmark and against Debtors in the amount of $4,500,000.

of the Thomas Emerald. Based on AT Emerald's disregard of the court's order and a lack of information about the sale, Beach moved for an order to shorten the time for a hearing on a forthcoming motion to appoint a chapter 11 trustee.

The bankruptcy court entered an order setting a hearing on the motion to appoint a chapter 11 trustee for August 22, 2014, and required Debtors to appear at the hearing.

**C.     The Motion to Appoint a Trustee, Withdrawal of Debtors' Counsel and Conversion of the Case**

Beach then filed its motion to appoint a chapter 11 trustee (the "Beach Motion"). Beach attached a letter from Koyo threatening to declare the purchase and sale agreement null and void if Beach inspected the Thomas Emerald. Beach argued that cause existed to appoint a trustee because AT Emerald's refusal to permit Beach to inspect the Thomas Emerald, the lack of information about the alleged sale, and the strange letter from Koyo all gave rise to "a severe lack of credibility and creditor confidence in current management." AT Emerald opposed the motion and argued that Mr. Thomas was the best person to sell the Thomas Emerald and Koyo would not work with a chapter 11 trustee.

Prior to the hearing, Mr. Smith filed a motion to withdraw as attorney for Debtors and AT Emerald (the "Withdrawal Motion"). Mr. Smith asserted that he and his clients had come to an impasse regarding certain

aspects of his representation and an adversarial relationship had developed. Mr. Smith stated that he had provided reasonable written notice to Debtors of his intent to withdraw. The bankruptcy court set the hearing on the Withdrawal Motion to coincide with the hearing on the Beach Motion. The certificate of service attached to the Withdrawal Motion indicated that Debtors were served by mail and also by email.

At the August 22, 2014 hearing, the bankruptcy court granted the Withdrawal Motion. Mr. Smith indicated his willingness to argue the Beach Motion on behalf of AT Emerald, but the bankruptcy court reasoned that the parties would not be prejudiced, and given the irreconcilable differences between Mr. Smith and his clients, it would likely be more dangerous for Mr. Smith to represent those divergent interests. Debtors made their appearances on the record, but they did not object to the Withdrawal Motion.

Mr. Thomas argued that a chapter 11 trustee should not be appointed because based on his expertise and relationship with Koyo he was the best person to handle the sale. The bankruptcy court then asked Mr. Thomas about his history and dealings with Koyo, his due diligence with respect to the buyer, the lack of documentation from Koyo, and why Koyo refused to work with a chapter 11 trustee. During the discussion, Mr. Thomas reported that he originally purchased the Thomas Emerald for $20,000. After Mr. Thomas explained his history with Koyo, he asked for two weeks

to hire new counsel.

In response to Mr. Thomas's statements and the Koyo letter, the UST argued that Koyo did not appear to be a legitimate buyer. The UST stated its support for conversion of the case to chapter 7 to permit a trustee to be appointed and take control of the assets. Beach agreed that Koyo was not a legitimate buyer and suggested modifying the Beach Motion to instead convert the case to chapter 7.

The bankruptcy court concluded that Koyo was not a legitimate buyer and AT Emerald was being "scammed." Mr. Thomas renewed his request for a two-week continuance, which the court denied. The bankruptcy court then converted both cases to chapter 7. The conversion orders were entered on August 29, 2014. Debtors did not appeal. Chapter 7 trustee, Jeri Coppa-Knudson (the "Trustee") was appointed in both cases. After a lengthy process, the Trustee eventually sold the Thomas Emerald for $25,000.[4]

## D.    The Motion to Vacate and the Court's Ruling

In July 2019, after the bankruptcy court set a final evidentiary hearing on the Trustee's motion to sell the Thomas Emerald, Debtors filed a motion to vacate the conversion order pursuant to Rule 60(b)(4). Debtors argued

---

[4] During the sale process, Debtors filed a motion to recuse because they had filed suit against Judge Beesley. Judge Beesley recused himself and the case was reassigned to Judge Spraker on March 25, 2019.

that the bankruptcy court's failure to permit Debtors to retain counsel prior to converting their case constituted a deprivation of their due process rights. They argued that they were prejudiced by the conversion because they lost the ability to control the sale of the Thomas Emerald and were not permitted to show that the safety protocols at Sarasota Vault ensured the safety of the emerald notwithstanding a lack of insurance.

At the hearing on the motion to vacate, Debtors argued for the first time that they did not have notice of the Withdrawal Motion and that they had no notice that Mr. Smith had filed the opposition to the Beach Motion. Based on these new factual issues, the bankruptcy court set an evidentiary hearing.

At the evidentiary hearing, Mr. Thomas requested a continuance of 30-60 days to permit Debtors to retain counsel. The Trustee and Kenmark objected to the continuance and, although Mr. Thomas stated that he had been negotiating with two attorneys about engagement, he declined to present testimony in support of his request for a continuance. The bankruptcy court denied his request. Mr. Thomas then refused to testify or present any evidence in support of his motion to vacate.

The Trustee called Mr. Smith,[5] who testified that he notified Debtors of the August 22, 2014 hearing and the requirement that they attend in

[5] Debtors expressly waived their attorney-client privilege in their reply to the Trustee's opposition to the motion to vacate.

8

person. Mr. Smith testified that he had a phone conversation with Anthony Thomas on August 18, 2014, in which he discussed the need to file a response to the Beach Motion and a need for Mr. Thomas's signature on a declaration. Mr. Smith also testified that his office sent an email to Debtors on August 20, 2014, with a draft of the Withdrawal Motion and a reminder to appear with their new replacement counsel at the August 22, 2014 hearing.

Because AT Emerald could not appear without legal counsel and Debtors could not represent AT Emerald in court, the bankruptcy court construed the motion to vacate as seeking only to vacate the conversion order with respect to Debtors' individual case. The bankruptcy court denied the motion to vacate and held that Debtors had adequate notice and opportunity to be heard on the Withdrawal Motion and the Beach Motion. The court also held that Debtors did not demonstrate that conversion caused them any prejudice because they admitted their chapter 11 strategy depended on liquidation of the Thomas Emerald, and they failed to explain what would have been different if the August 22, 2014 hearing were continued to allow them to retain new counsel. The bankruptcy court entered a written order and Debtors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred by denying Debtors' motion to vacate the conversion order as void.

## STANDARD OF REVIEW

We review the denial of a motion under Civil Rule 60(b)(4) de novo. *Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.)*, 290 B.R. 718, 726 (9th Cir. BAP 2002). "Whether a person's due process rights have been violated is a mixed question of law and fact, which is reviewed de novo." *Id.* (citing *Wilborn v. Gallagher (In re Wilborn)*, 205 B.R. 202, 206 (9th Cir. BAP 1996)). Under a de novo review, we look at the matter anew, giving no deference to the bankruptcy court's determinations. *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572 (9th Cir. BAP 2011).

## DISCUSSION

As an initial matter we address the scope of this appeal. The bankruptcy court properly construed Debtors' motion to vacate as applying only to Debtors' individual case because AT Emerald was required to be represented by counsel in federal court. *See D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004). Debtors were permitted to file a notice of appeal on behalf of AT Emerald, but, because the entity did not engage counsel, its appeal was subsequently dismissed. Consequently, our review is limited to the bankruptcy court's denial of the motion to vacate the conversion order with respect to Debtors'

individual case.

Civil Rule 60(b)(4) permits a bankruptcy court to relieve a party from a final order if it is "void." An order is "void" for purposes of Civil Rule 60(b)(4) "only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law." *United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999). Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Debtors argue that the conversion order was entered without due process because the bankruptcy court did not permit their attorney to argue the motion to appoint a chapter 11 trustee and did not provide adequate notice of the conversion.

The record demonstrates that Debtors had sufficient notice of the Withdrawal Motion. They appeared at the hearing and did not object to withdrawal. Instead, they asked for a continuance of the Beach Motion to find new counsel. Additionally, permitting counsel to withdraw prior to the argument on the Beach Motion had no impact on Debtors' individual case because the Beach Motion sought to appoint a chapter 11 trustee only in the AT Emerald case. This was not a deprivation of Debtors' due process

11

rights with regard to conversion of their individual case.

However, we agree that Debtors did not have adequate notice that the bankruptcy court intended to convert their individual case to chapter 7 at the August 2014 hearing. There was no pending motion to convert Debtors' case and the bankruptcy court did not raise the possibility of conversion until the end of the hearing when it converted the case. The bankruptcy court failed "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

But despite this procedural defect, the bankruptcy court did not err by denying the motion to vacate because Debtors did not demonstrate any prejudice and they cannot use Civil Rule 60(b)(4) as a substitute for a timely appeal.

Even in cases where a bankruptcy court errs by failing to provide adequate notice and opportunity to object, the appellant must show prejudice from the procedural deficiencies. *See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 776-77 (9th Cir. 2008) ("Because there is no reason to think that, given appropriate notice and a hearing, Rosson would have said anything that could have made a difference, Rosson was not prejudiced by any procedural deficiency.").

In *Rosson*, the Ninth Circuit held that although the debtor was deprived of a meaningful opportunity to be heard, the conversion order

12

was proper because the debtor could "show no prejudice arising from the defective process afforded him." *Id.* at 776; *see also City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.)*, 22 F.3d 954, 959 (9th Cir. 1994) (rejecting due process claim for lack of prejudice where debtor could not show that any different or additional arguments would have been presented if bankruptcy court had timely approved petition for new counsel).

Debtors refused to present any evidence to the bankruptcy court in support of their motion to vacate and they did not identify any prejudice related to conversion of their individual case.[6] Debtors did not provide any persuasive, substantive argument why their case would not have been converted if they had adequate notice, and they did not demonstrate any prejudice by the procedural defect.

Debtors were present at the August 2014 hearing when the

---

[6] Debtors argued they were prejudiced by losing control of the sale of the Thomas Emerald which they contend would have yielded hundreds of millions of dollars. This contention is unsupported by the record. Mr. Thomas purchased the Thomas Emerald for $20,000. The Trustee was able to sell the Thomas Emerald for $25,000. Moreover, loss of control of the Thomas Emerald could feasibly establish prejudice in the AT Emerald case, but not in the individual case. At oral argument, Debtors argued for the first time that they were prejudiced because they also lost control of two unscheduled litigation claims which the Trustee sold upon court approval. Debtors waived this issue by failing to raise it in the bankruptcy court or in their opening brief. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). Debtors did not object to the Trustee's standing and did not appeal the orders approving the sales, which are now final.

13

bankruptcy court converted their case, and they received notice of the conversion order in September 2014. The conversion order was a final order because conversion "takes control of the estate out of the hands of the debtor, it seriously affects substantive rights and may lead to irreparable harm to the debtor if immediate review is denied." *In re Rosson*, 545 F.3d at 770 (citing *Mason v. Young (In re Young)*, 237 F.3d 1168, 1173 (10th Cir. 2001) ("[U]nder Chapter 7, once the debtor's assets have been liquidated, it is virtually impossible to reassemble them"); *In re Rebeor*, 89 B.R. 314, 320-21 (Bankr. N.D.N.Y. 1988) ("[I]mmediate review [i]s necessary to protect Debtor's substantive rights to reorganize . . . and to prevent irreparable harm through the potential loss of his property sold to good faith purchasers.")). Despite the clear consequence of conversion, Debtors did not appeal.

Even if the bankruptcy court converted the case without due process, "a motion under Rule 60(b)(4) is not a substitute for a timely appeal." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270-71 (2010) (citing *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997)). "[I]f a party fails to appeal an adverse judgment and then files a Rule 60(b)(4) motion after the time permitted for an ordinary appeal has expired, the motion will not succeed merely because the same argument would have succeeded on appeal." *Kocher*, 132 F.3d at 1229; *see also* 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, CIVIL, § 2862 (3d ed. 2020).

For approximately five years, Debtors unsuccessfully opposed the Trustee's efforts to liquidate and administer assets in their individual case. They only filed the motion to vacate the conversion order when the sale of the Thomas Emerald appeared inevitable.

Debtors cannot use Civil Rule 60(b)(4) as a substitute for a timely appeal, even if they may have been successful on that appeal. Debtors have not shown that the bankruptcy court erred by refusing to vacate the conversion order under Civil Rule 60(b)(4).

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order denying Debtors' motion to vacate.